CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JAN 0 8 2008
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
~~ROANOKE~~ DIVISION
L"Burg

| | | |
|---|---|---|
| GARY A. WILMER, | ) | |
| Plaintiff, | ) | Civil Action No. 6:07cv00002 |
| | ) | |
| v. | ) | |
| | ) | By: Michael F. Urbanski |
| MICHAEL ASTRUE, | ) | United States Magistrate Judge |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| Defendant. | ) | |

### REPORT AND RECOMMENDATION

Plaintiff Gary A. Wilmer ("Wilmer") brings this action pursuant to 42 U.S.C. § 405(g) for review of the Commissioner of Social Security's decision denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383 ("Act"). This case was referred to the undersigned Magistrate Judge on March 22, 2007, for report and recommendation. Following the filing of the administrative record and briefing,[1] the case is now ripe for decision.

The undersigned finds that substantial evidence supports the Commissioner's decision that Wilmer has not met his burden of proving that he is disabled from all substantial gainful activity. In particular, substantial evidence supports the Commissioner's conclusion that without regard to health issues related to alcoholism, Wilmer was not disabled under the Act. See 20

---

[1] Plaintiff Wilmer filed a letter brief and certain medical records on October 29, 2007. The Commissioner filed his brief on November 30, 2007. Because Wilmer is proceeding pro se, on December 14, 2007 the clerk issued a notice advising Wilmer of the Commissioner's summary judgment motion and providing him an opportunity to respond within fifteen (15) days. That period has expired without additional response from Wilmer.

C.F.R. §§ 404.1535(b)(1); 416.935(b)(1). Accordingly, it is recommended that the ALJ's decision be affirmed.

## I.

Wilmer was a younger individual, born on June 24, 1963, (Administrative Record [hereinafter R.] at 31), on the date of alleged onset of disability.[2] Wilmer graduated from high school and has past relevant work experience as a cook and set-up person, a janitor in a warehouse, and a material handler, all of which were greater than the light exertion level. (R. 31) Wilmer filed an application for benefits on July 25, 2003, alleging disability due to nerves, back problems, tremors, swelling and sleep problems. (R. 345) Wilmer's claims were denied at both the initial and reconsideration levels of administrative review, (R. 25), and a hearing was held before an administrative law judge ("ALJ") on June 30, 2005. (R. 678-703) Although Wilmer proceeds pro se in this appeal, he was represented by counsel at the June 30, 2005 administrative hearing. On August 3, 2005, the ALJ issued a decision denying Wilmer's claims for benefits, finding that when alcoholism is factored out of consideration, Wilmer is able to perform a range of light work present in significant numbers in the national economy. (R. 33) The ALJ's decision became final for the purposes of judicial review under 42 U.S.C. § 405(g) on September 28, 2006, when the Appeals Council denied Wilmer's request for review. (R. 8-11)[3] Wilmer then filed this action challenging the Commissioner's decision.

---

[2] Wilmer originally claimed onset of disability on October 31, 2000, but later amended it to March 19, 2003, one day after an unfavorable decision by an ALJ on a prior application. (R. 25, 254-64)

[3] By letter dated January 25, 2007, the Appeals Council extended Wilmer's time to file a civil action to thirty (30) days from receipt of that letter. (R. 10-11)

2

**II.**

Judicial review of a final decision regarding disability benefits under the Act is limited to determining whether the ALJ's findings "are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing 42 U.S.C. § 405(g)). Accordingly, the reviewing court may not substitute its judgment for that of the ALJ, but instead must defer to the ALJ's determinations if they are supported by substantial evidence. Id. Substantial evidence is such relevant evidence which, when considering the record as a whole, might be deemed adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays, 907 F.2d at 1456; Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

**III.**

The evidence in the administrative record supports the ALJ's conclusion that Wilmer did not meet his burden of establishing the existence of a disability for a twelve (12) month period after March 19, 2003, excluding consideration of his alcoholism. Throughout the period of Wilmer's claimed disability, concerns over his alcoholism dominate his medical records. To be sure, the medical records also reflect back pain and hypertension, but there are no medical opinions stating that he is disabled by those impairments.

The first medical record during the period at issue on this appeal concerns a voluntary inpatient admission in April, 2003, at Lynchburg General Hospital for suicidal ideations. (R. 415-444) Wilmer's admission record notes that he stated that he cannot work due to a morning tremor and because of chronic low back pain. (R. 415) The medical history noted that Wilmer was taking ibuprofen for his back pain and that he had hypertension which was treated

3

with medications. The mental health consultation note stated that "the patient was quite intoxicated but was amazingly coherent in speech." (R. 416) Wilmer's hospital admission note recounted his suicidal ideations, that he was not working and that money problems contributed to his depression. The note recited further that "[t]he patient says that he has had the 'shakes' since childhood and so he drinks about 4-5 beers per day to control the shaking. The patient denies being an alcoholic. The patient did admit to Dr. Johnson that he drinks considerably more than 4-5 beers per day." (R. 418) Wilmer was diagnosed with acute alcohol intoxication and admitted to the ICU on the Alcohol Withdrawal Pathway, along with depression and hypertension. (R. 420) Wilmer was discharged four days later, and his discharge summary was fairly revealing, stating as follows:

> Interestingly, once he was fully sober and clean, he indicated that his primary problem was his alcohol abuse, particularly with regard to how it affects his mood. He states that his presentation in the emergency room was strictly due to his alcohol intoxication, and he was definitely not having any suicidal thoughts or intentions, and would not try to harm himself at all, provided he was sober.

(R. 446) The discharge note indicated that Wilmer was initially treated with some blood pressure medications, but that these were "discontinued at the time of discharge because it was felt that the high blood pressure was likely related to alcohol withdrawal symptoms." (R. 446) The discharge summary concluded that Wilmer "had no significant physical problems during the course of his hospital stay, and at the time of discharge he was felt to be quite safe and stable." (R. 446-47)

The administrative record next contains a series of records from Central Virginia Community Services following the time of his hospital admission in April, 2003 and continuing through 2005. The assessments done by this local community services agency reflect that Wilmer continued to live independently with occasional references to back pain and frequent

4

references to alcohol abuse. (R. 499-536, 571-615) A Mental Limitations Assessment completed by Dr. David Brumstetter on December 12, 2003, indicated that in the vast majority of the functional categories Wilmer fell in the "none to slight" impairment category, and noted only moderate impairment in the areas of ability to maintain attention and concentration for extended periods, accepting criticism and responding to supervisors and getting along with co-workers. (R. 499-500)[4]

Wilmer appeared at the Lynchburg General Hospital Emergency Room in May 2003 seeking treatment for a minor cut to his leg following a fall. The treatment notes contain references to alcohol and indicate that Wilmer was not in any apparent distress. (R. 487, 491, 495, 497).

Wilmer was seen by Family Nurse Practitioner ("FNP") Kenneth L. Swanson at Centra Health's Johnson Health Center on June 10, 2003 for follow up of his back pain. On physical examination, Wilmer was described as smelling of alcohol but in no apparent distress. (R. 471) FNP Swanson described a slight tremor to the upper extremities and noted that Wilmer got up on the exam table without any problems. (R. 471)

Wilmer was evaluated for disability by state agency physicians in November, 2003. A Physical Residual Functional Capacity ("RFC") Assessment was completed by Dr. Randall Hays on November 14, 2003 and reviewed and affirmed by Dr. Frank M. Johnson on March 3, 2004. (R. 537-44) This assessment concludes that "claimant should be able to perform light work."

---

[4] The range of impairment set forth in this document is "none/slight," "moderate," "marked," "extreme," and "unknown." As defined in this document, a "moderate" impairment means "significant limitation, but still able to function satisfactorily." According to Dr. Brumstetter, Wilmer had twelve scores of "none/slight" impairment and four in the "moderate" range. On one category, involving work pace, Dr. Brumstetter placed a question mark between the "none/slight" and "moderate" levels. Wilmer had no impairments in the "marked" or "extreme" categories. (R. 499-500)

5

(R. 538-39) Julie Jennings, Ph.D., completed a Mental Residual Functional Capacity Assessment and a Psychiatric Review Technique on November 14, 2003, each of which was reviewed and affirmed by Eugenie Hamilton, Ph.D. on March 3, 2004. (R. 545-64) Although Dr. Jennings rated Wilmer as moderately limited in roughly half of the functional categories, she did not rate him as markedly limited in any category. (R. 545-46) Dr. Jennings concluded that "Mr. Wilmer has a long term dependency on alcohol and a mood disorder complicated by alcoholism. He would consequently be restricted to simple, unskilled, non-stressful work." (R. 547) Likewise, the consultant's notes on the Psychiatric Review Technique states that "the claimant has a history of substance abuse and depression, but would be expected to have only a slight psych impairment if he maintained sobriety." (R. 562)

In April and May, 2004, Wilmer was seen by FNP Swanson, this time complaining of swelling on his feet which was treated with medications. In the May 12, 2004 note, FNP Swanson stated that he "also spent quite a bit of time with Mr. Wilmer today telling him that his alcohol consumption is causing a number of problems to his body, he states understanding." (R. 617)

FNP Swanson completed a Medical Source Statement on April 26, 2005, noting that Wilmer was diagnosed with back pain, alcohol abuse, hypertension and anxiety. (R. 638) The assessment notes that emotional factors contribute to the severity of Wilmer's symptoms, and lists anxiety and alcohol abuse as psychological conditions affecting pain. (R. 639) The assessment pegs Wilmer's pain as being severe enough to interfere with attention and concentration "constantly." (R. 639) FNP Swanson indicated that Wilmer could sit only two hours in an eight hour work day and stand/walk no more than two hours in an eight hour work

6

day. (R. 640-41) FNP Swanson also estimated that, on average, Wilmer would miss more than three work days a month. (R. 644)

At the administrative hearing held on June 30, 2005, the ALJ asked a vocational expert ("VE") to consider the limitations found in Dr. Hays' physical RFC and Dr. Brumstetter's Mental Limitations Assessment as part of a hypothetical question posed to determine whether there were jobs in the national economy which a person having these impairments could perform. (R. 696-99) Considering these limitations, the VE testified that such a person would be able to perform a number of jobs at the light, unskilled levels, including food preparation worker, packer, and cleaner, all of which were available in sufficient numbers in the national economy. (R. 698-99)

## IV.

In light of conflicting evidence in the record, it is the duty of the ALJ to fact-find and to resolve any inconsistencies between a claimant's alleged symptoms and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Accordingly, the ALJ is not required to accept Wilmer's subjective allegation that he is disabled by pain, but rather must determine, through an examination of the objective medical record, whether he has proven an underlying impairment that could reasonably be expected to produce the symptoms alleged. Craig v. Chater, 76 F.3d 585, 592-93 (4th Cir. 1996) (stating the objective medical evidence must corroborate "not just pain, or some pain, or pain of some kind or severity, but the pain the claimant alleges she suffers."). Then, the ALJ must determine whether Wilmer's statements about his symptoms are credible in light of the entire record. Credibility determinations are in the province of the ALJ, and courts normally ought not interfere with those determinations. See Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989).

7

The ALJ found that Wilmer's complaints of disabling pain were not entirely credible and were out of proportion to the objective medical evidence in the record. (R. 30) Further, the ALJ noted that although Wilmer's conditions were likely to produce some degree of pain and discomfort, the objective medical evidence does not support a conclusion that he suffers pain of the intensity, frequency, and or duration which would preclude the performance of all substantial gainful activity. (R. 30)

U.S.C.A. § 423(d), which defines the term "disability" for the purposes of disability insurance benefits, provides in pertinent part that "[a]n individual shall not be considered to be disabled for purposes of this [subchapter] if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). In nearly identical language, 42 U.S.C. § 1382c(a)(3)(J) sets forth the same exclusion for SSI. Implementing regulations specify that alcoholism or drug addiction is a contributing factor material to a disability determination if an individual would not be disabled if he stopped using alcohol or drugs. See 20 C.F.R. §§ 404.1535(b), 416.935(b). The regulations further explain that a person who suffers from disabling impairments unrelated to alcoholism or drug addiction is not prevented from receiving benefits. See id.

If the ALJ finds the claimant disabled, the guidelines required the ALJ to determine whether there is medical evidence of drug abuse and/or alcoholism. If the claimant is disabled and there is medical evidence of drug abuse and/or alcoholism, the ALJ must determine whether the claimant would still be disabled if he stopped using drugs or alcohol (i.e., whether the drug or alcohol addiction is a material factor contributing to the disability). If drug abuse and/or alcoholism is material, the claimant cannot be considered to be disabled, and is not entitled to or

8

eligible for benefits. 20 C.F.R. §§ 404.1535; 416.935. The plaintiff has the burden of proving that his drug abuse and/or alcoholism are not contributing factors material to the determination of his disability. See Brown v. Apfel, 192 F.3d 492, 498 (5th Cir. 1999); Mittelstedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000).

Simply put, the medical records do not support the notion that, alcoholism aside, Wilmer is totally disabled. Wilmer seldom sought treatment for his back pain, and no doctor has opined that his back condition alone, separate and apart from his alcoholism, is disabling. The state agency physicians opined that Wilmer was capable of light work. (R. 537-44) FNP Swanson is the only medical professional who indicated that Wilmer cannot work at all, but even his assessment indicated that Wilmer's alcoholism contributed to his pain and functional limitations. (R. 639) As such, even under FNP Swanson's assessment, Wilmer's alcoholism played a material role in his impairments.[5] Further, careful review of the medical records for the period at issue does not reveal significant complaints by Wilmer of any physical disability. Rather, his medical issues center around his alcoholism. In short, given the absence of evidence of disabling impairments other than his alcohol addiction, the ALJ was correct to conclude that Wilmer has not met his burden of proving disability.[6]

V.

Wilmer argues on appeal that he should be awarded disability based on findings by Dr. Peter Houck at the Johnson Medical Center on July 12, 2007. Wilmer attaches to his brief a

---

[5] The ALJ discounted FNP Swanson's opinions for an entirely different reason, that a family nurse practitioner is not a acceptable medical source under the disability regulations. See 20 C.F.R. §§ 404.1502, 1513(a), 1527(a)(2) and 416.902, 913(a) and 927(a)(2). (R. 29)

[6] At the same time, careful review of the record reveals that the requirements of Listing 12.09, concerning Substance Addiction Disorder, are not met in this case.

9

Commonwealth of Virginia, Department of Social Services Medical Report for General Relief and Medicaid completed by Dr. Houck. The problem with this report, of course, is that it was not presented to the Commissioner for evaluation during the administrative process and is unaccompanied by any treatment or examination notes. In order for this document to be considered at this stage, it must qualify as new, material evidence under sentence six of 42 U.S.C. § 405(g).

A district court may remand a social security case on the basis of newly discovered evidence, a "sentence six" remand, when plaintiff satisfies four prerequisites. 42 U.S.C. § 405(g); Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985). First, the evidence must be "new." Id. (holding "new" evidence is "'relevant to the determination of disability at the time the application was first filed and not merely cumulative'") (quoting Mitchell v. Schweiker, 699 F.2d 185, 188 (4th Cir. 1983)). Second, it must be "material to the extent that the Secretary's decision might reasonably have been different had the new evidence been before her." Id. (quoting King v. Califomo, 599 F.2d 597, 599 (4th Cir. 1979); Sims v. Harris, 631 F.2d 26, 28 (4th Cir. 1980) (internal quotations omitted)). Third, there must be good cause for the "failure to submit the evidence when the claim was before the Secretary." Id. Fourth, the claimant must make "'at least a general showing of the nature' of the new evidence." Id. (quoting King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)).

Wilmer's July, 2007 medical report fails to meet the first prerequisite of the above stated test for remand. Given that Dr. Houck's report is dated nearly two years after the ALJ's decision in this case, and on its face indicates that Wilmer's condition is "expected to deteriorate," there is no possible way to consider it as relating to Wilmer's condition during the period at issue in this disability application. Thus, if Wilmer is of the view that he is now disabled based on

10

Case 6:07-cv-00002-NKM   Document 17   Filed 01/08/08   Page 10 of 12   Pageid#: 62

deterioration after the ALJ's August 3, 2005 decision in this case, his remedy is to file a new application under the regulations applicable for such applications.[7] See 20 C.F.R. §§ 404.620(a)(2), 416.330(b). In short, Wilmer's medical report dated nearly two years after the ALJ's decision in this case which, on its face, notes deterioration, cannot form the basis of a remand under Borders.

Further, in his October 7, 2007 submission, Wilmer argues that he is disabled due to psoriasis, a condition that is not reflected in the administrative record in this case. The court cannot assess the disabling consequences of this impairment which was not presented to the Commissioner for consideration. Again, Wilmer's remedy is to file a new application to the extent he can do so consistent with the regulations.

## VI.

Based on the foregoing, it is the recommendation of the undersigned that the Commissioner's motion for summary judgment be granted and this case dismissed.

In making this recommendation, the undersigned does not suggest that plaintiff is totally free of all pain and subjective discomfort. The objective medical record simply fails to document the existence of any condition which would reasonably be expected to result in total disability for all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating plaintiff's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. It is recommended, therefore, that defendant's motion for summary judgment be granted.

---

[7] Dr. Houck's medical report is dated July 12, 2007 and the ALJ's decision in this case was rendered on August 3, 2005.

The Clerk is directed immediately to transmit the record in this case to the Hon. Norman K. Moon, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court hereby is directed to send a certified copy of this Report and Recommendation to plaintiff and counsel of record for defendant.

ENTER: This 8th day of January, 2008.

Michael F. Urbanski
United States Magistrate Judge